## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| **JOHN DOE, a/k/a SEAN W. LEE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 2:21-cv-02156-SHL-atc** |
| ) | |
| **WILLIAM LEE, Governor of the State of** ) | |
| **Tennessee, and DAVID B. RAUSCH,** ) | |
| **Director of the Tennessee Bureau of** ) | |
| **Investigation,** ) | |
| ) | |
| **Defendants.** ) | |

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PARTIAL MOTION TO DISMISS

Before the Court by order of reference[1] is the Motion to Dismiss in Part, filed on October 10, 2021, by Defendant William Lee, Tennessee's Governor, and David B. Rausch, Director of the Tennessee Bureau of Investigations. (ECF Nos. 39, 40.) Plaintiff John Doe, a/k/a Sean W. Lee ("Doe"), filed his response on December 13, 2021. (ECF No. 43.) Defendants filed their reply on December 17, 2021. (ECF No. 44.) For the reasons stated below, it is recommended that the motion be GRANTED IN PART AND DENIED IN PART.

## PROPOSED FINDINGS OF FACT

Doe filed his lawsuit against Defendants on March 12, 2021. (ECF No. 1.) After the Court entered an order appointing him counsel on May 11, 2021 (ECF No. 11), Doe filed his

---

[1] Pursuant to ECF No. 13, this case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

amended complaint on September 21, 2021.  (ECF No. 27.)  In the amended complaint, Doe

challenges the constitutionality of the Tennessee Sexual Offender and Violent Sexual Offender

Registration, Verification, and Tracking Act of 2004 ("SORA" or the "Act"), as amended, on

several grounds.[2]  Counts I and II allege the Act violates the Constitution's Ex Post Facto

Clause, Article I, section 10, clause 1.  (*Id.* at 39–41.)  Count III alleges that the Act violates

Doe's Due Process rights in several ways, including: (a) requiring him to register as a violent

sexual offender; (b) restricting his right to travel both nationally and internationally; (c)

restricting his ability to work, i.e., engage in the common occupations of life; (d) retroactively

applying amendments to the Act that came after Doe's offenses; (e) retroactively applying the

Act to Doe and breaching his plea agreement with the State of Tennessee; (f) imposing criminal

liability upon Doe for purely passive acts, without requiring proof of actual knowledge of the

duty to comply with the Act; and (g) based on the vagueness and impossibility of the Act.  (*Id.* at

41–45.)  Count IV alleges the Act violates Doe's First Amendment rights.  (*Id.* at 46.)  Count V

alleges the Act violates Doe's Eighth Amendment rights against cruel and unusual punishment.

(*Id.* at 46–47.)

 Doe's claims are rooted in his convictions related to multiple sex crimes and the

application of the Act to him.[3]  In 2004, Doe was charged with three counts of criminal attempt

of an aggravated sexual battery in the Criminal Court of Tennessee for the 30th Judicial District

at Memphis.  (ECF No. 27, at 14; ECF No. 27-2, at 1–5.)  The first two instances occurred

between May 1 and August 11, 2003 (ECF No. 27-2, at 4–5), and the third occurred between

---

[2] At least one court to have considered the Act refers to it with the initialism "SORVTA."  *See Doe v. Rausch*, 461 F. Supp. 3d 747 (E.D. Tenn. 2020).

[3] The facts herein are gleaned from Doe's amended complaint, and, as explained below, the allegations are accepted as true and the facts are construed in a light most favorable to Doe.  *See* Fed. R. Civ. P. 12(b)(6).

October 1 and 31, 2003 (*id.* at 2).  Doe also was charged with criminal solicitation of an

aggravated sexual battery, which was said to have occurred between January 3 and 4, 2004.  (*Id.*

at 3.)  On August 18, 2004, Doe entered an "Alford" plea as to all four counts.  (ECF No. 27, at

14; ECF No. 27-1.)  He received concurrent sentences for those offenses and was ordered to

enroll in the sex offender registry within forty-eight hours of his release.  (ECF No. 27, at 14;

ECF No. 27-1, at 2–7.)  Doe asserts that during his sentencing the judge never advised him "that

even though the criminal conduct that he was admitting occurred while the 1994 Act and its

amendments were in effect, that he would nonetheless be required to comply with [the] 2004 act

and all of the not[-]yet created amendments" and "there was no mention of the 2004 Act

whatsoever either in the plea agreement entered between the parties or at the sentencing

hearing."  (ECF No. 27, at 14–15.)

On April 12, 2005, a federal grand jury in the Western District of Tennessee returned a

three-count indictment against Doe.  2:05-cr-20120-MSN, ECF No. 16.  The charges included

violations of 18 U.S.C. §§ 2422(b) and 2423(b), which involve illicit sex acts with minors,[4] and

---

[4] 18 U.S.C. § 2422(b) provides:

> Whoever, using the mail or any facility or means of interstate or foreign
> commerce, or within the special maritime and territorial jurisdiction of the United
> States knowingly persuades, induces, entices, or coerces any individual who has
> not attained the age of 18 years, to engage in prostitution or any sexual activity for
> which any person can be charged with a criminal offense, or attempts to do so,
> shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2423(b) provides:

> A person who travels in interstate commerce or travels into the United States, or a
> United States citizen or an alien admitted for permanent residence in the United
> States who travels in foreign commerce, with a motivating purpose of engaging in
> any illicit sexual conduct with another person shall be fined under this title or
> imprisoned not more than 30 years, or both.

one forfeiture count under 18 U.S.C. § 2253.[5] 2:05-cr-20120-MSN, ECF No. 16.  The offenses related to those charges allegedly occurred between January and March 2005.  (ECF No. 27, at 15.)  On December 12, 2005, Doe pled guilty to the use of a computer/telephone system for purpose of persuading a minor to engage in sexual acts in violation of § 2422(b).  (*Id.*)  On July 14, 2006, Doe was sentenced to 188 months incarceration and lifetime supervised release.  (*Id.*)

Doe was incarcerated from March 21, 2005, until January 24, 2019.  (*Id.*)  Upon his release from prison, he moved into his parents' house at 140 Burke Lane in Portland, Tennessee, in Sumner County.  (*Id.*)  Doe's parents and their minor great grandson lived in the home.  (*Id.*)  On January 24, 2019, Doe was notified that he had forty-eight hours to register with the Sumner County Sheriff's Office to be in compliance with the Act.  (*Id.* at 16.)  The next morning, Doe reported to the Sheriff's Office and attempted to register but was unable to because the officer responsible for the registry was on vacation until the following day.  (*Id.*)  When the officer contacted Doe the next day, Doe informed her that he would return to the Sheriff's Office that afternoon to complete his registration.  (*Id.*)  Before he did, the officer called Doe again and asked him if there was a minor living at Doe's parents' home.  (*Id.*)  Doe confirmed that his minor grandson was temporarily living in the home.  (*Id.*)

Doe was then arrested and charged with violation of residential restrictions under Tennessee Code Annotated § 40-39-211(c) and false reports under Tennessee Code Annotated § 39-16-502.  (*Id.* at 17.)  Doe agreed to plead guilty to attempted violation of residential restrictions, a Class A misdemeanor, was sentenced to 270 days in jail, and was released on August 17, 2019.  (*Id.*; ECF No. 27-2, at 6–10.)

---

[5] Doe's complaint asserts he was charged with two counts of violating 18 U.S.C. § 2422(b), but he was actually charged with one count under that provision and a second count under § 2423(b). (ECF No. 27, at 15.)

This Court then issued a warrant requiring Doe to appear and respond to a petition alleging that he had violated the conditions of his federal supervised release. (ECF No. 27, at 17; *see also* 2:05-cr-20120-MSN, ECF No. 118.) On October 8, 2019, District Judge Mark S. Norris held a hearing on the supervised release violation and the same day revoked Doe's supervised release and sentenced him to eighteen months imprisonment followed by a lifetime of supervised release. (ECF No. 27, at 17; 2:05-cr-20120-MSN, ECF Nos. 138, 139.) After an appeal, on October 2, 2020, the Sixth Circuit Court of Appeals concluded that the judgment was procedurally unreasonable and remanded it for re-sentencing. (ECF No. 27, at 17; 2:05-cr-20120-MSN, ECF No. 150.) Doe was re-sentenced on January 13, 2021, to eighteen months imprisonment, with credit for time served, followed by a lifetime of supervised release. (ECF No. 27, at 17; 2:05-cr-20120-MSN, ECF Nos. 156, 157, 158.) After Doe appealed that sentence on July 19, 2021, the Sixth Circuit Court of Appeals affirmed the re-sentencing decision.[6] 2:05-cr-20120-MSN, ECF Nos. 159, 164.

Doe alleges that, as a result of his 2019 arrest and subsequent conviction, he lost a job as a project manager for Solar point, LLC, with an annual salary of $75,000 to $100,000. (ECF No. 27, at 18.) Doe asserts that "the company owners had serious concerns that a similar incident could happen in the future, thus impacting business operations and Plaintiff's ability to perform his job." (*Id.*) At the root of Doe's claims is his contention that his state-court convictions were based on acts he committed in 2003 and 2004, when Tennessee's Sexual Offender Registration and Monitoring Act of 1994 ("SORMA"), the predecessor to SORA, was in effect. He further contends that his federal convictions were based on acts he committed in 2005, and, during the

---

[6] On April 22, 2022, Doe filed a Petition for Writ of Coram Nobus Under 28 U.S.C. § 1651 in the underlying criminal case, which remains pending. 2:05-cr-20120-MSN, ECF No. 166.

intervening nearly fourteen years he was incarcerated, "the 2004 Act had been amended in
excess of fourteen (14) times prior to his release." (*Id.* at 15.) Generally speaking, Doe contends
that the 2004 law should not apply to his actions that occurred prior to the law's enactment and
that amendments to SORA that came after his 2005 conviction should not be retroactively
applied to him.

In their Motion to Dismiss, Defendants seek to dismiss parts (a)–(f) of Count III[7] and
Count V in its entirety.

## PROPOSED CONCLUSIONS OF LAW

### I.    Standard of Review for Failure to State a Claim

To determine whether Plaintiff's complaint states a claim on which relief may be granted,
the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as articulated in
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).
"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim
showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the
. . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal citations
and quotations omitted). The Court "construes the complaint in a light most favorable to [the]
plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly
suggest an entitlement to relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir.
2012). Pleadings provide facial plausibility when they present "factual content that allows the
court to draw the reasonable inference that the defendant is liable for the misconduct
alleged." *Iqbal*, 556 U.S. at 678. However, "pleadings that . . . are no more than conclusions[]

---

[7] The Motion to Dismiss does not address Count III(g), Doe's claim that the Act violates Due
Process based on vagueness and impossibility.

are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

## II.    Doe's Due Process Claims

Doe alleges that the Act violates his Due Process rights in seven ways.  Defendants' motion seeks dismissal of the first six, as outlined below.  Before engaging in an analysis of each of the claims, the Court briefly explains that contours governing Due Process claims.

"Under the Fourteenth Amendment, "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) (quoting U.S. Const. amend. XIV, § 1).  "The due process clause has both procedural and substantive components."  *Id.* (citing *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012)).  Procedural Due Process provides a guarantee of fair procedure.  *Brown v. Bd. of Educ. of Shelby Cnty. Sch.*, 47 F. Supp. 3d 665, 678–79 (W.D. Tenn. 2014) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)).

Substantive Due Process, on the other hand, "prohibits States from infringing fundamental liberty interests, unless the infringement is narrowly tailored to serve a compelling state interest."  *Id.* at 678 (quoting *Lawrence v. Texas*, 539 U.S. 558, 593 (2003)).  "The interests protected by substantive due process are . . . much narrower than those protected by procedural due process."  *Bell v. Ohio State Univ.*, 351 F.3d 240, 249–250 (6th Cir. 2003).  "When reviewing a substantive due process claim," courts "first craft a careful description of the

asserted right and then determine whether that right is deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty, such that it can be considered a fundamental right." *Doe v. Michigan Dep't of State Police*, 490 F.3d 491, 500 (6th Cir. 2007) (internal citations and quotations omitted). "Legislation that infringes on a fundamental right is reviewed under the strict-scrutiny test and will be invalidated unless it is 'narrowly tailored to serve a compelling state interest.'" *Id.* (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993)). At the same time, "'[l]egislation that does not proscribe fundamental liberties . . . violates the Due Process Clause' where it imposes burdens without any 'rational basis' for doing so.'" *Am. Exp. Travel Related Servs. Co. v. Kentucky*, 641 F.3d 685, 689 (6th Cir. 2011) (quoting *Sheffield v. City of Fort Thomas, Ky.*, 620 F.3d 596, 613 (6th Cir. 2010)). "This rational basis test, though not toothless, is highly deferential; courts hold statutes unconstitutional under this standard of review only in rare or exceptional circumstances." *Id.* (internal citations and quotations omitted). Under rational basis review, "the law must be upheld if there is 'any plausible reason' for its passage, 'no matter how unfair, unjust, or unwise.'" *Newsome v. Lee*, No. 3:21-CV-00041, 2021 WL 1697039, at *7 (M.D. Tenn. Apr. 29, 2021) (quoting *DeBoer v. Snyder*, 772 F.3d 388, 404 (6th Cir. 2014), *rev'd sub nom. Obergefell v. Hodges*, 576 U.S. 644 (2015)).

In his response Plaintiff states generally that the Act violates procedural Due Process because "he was deprived of a 'liberty' or 'property' interest as a result of the changes, modifications, and enhanced punishments of the Act which were and continue to be implemented against him without providing the fundamentals of due process—notice and an opportunity to be heard." (ECF No. 43, at 4 (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).) Importantly, his complaint and response demonstrate that his claims based on infringements of

his right to travel and work are based on substantive Due Process.  (ECF No. 27, at 42–43; ECF

No. 43, at 5–6; 13–16.)

A.    Classification as a Violent Sexual Offender – Count III(a)

Defendants assert that, as a threshold matter, Plaintiff's Due Process claim based on the

requirement that he register as a violent sexual offender is time-barred.  (ECF No. 40, at 5.)

Plaintiff counters that classifying him as a violent sexual offender represents a continuing

violation of his rights, as "being characterized as a 'violent' offender injures plaintiff every day

because the defendants punish him retroactively every day and deprive him of his liberty every

day."  (ECF No. 43, at 6.)

The parties acknowledge that, because Plaintiff's claim is brought pursuant to 42 U.S.C.

§ 1983, state law provides the statute of limitations applicable to the claim.  (*See* ECF No. 40, at

5; ECF No. 43, at 6; *see also Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631,

634 (6th Cir. 2007) ("The statute of limitations applicable to a § 1983 action is the state statute of

limitations applicable to personal injury actions under the law of the state in which the § 1983

claim arises.") (citing *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 519 (6th Cir. 1997)).)

The parties also agree that, in Tennessee, the one-year statute of limitations for personal injury

actions outlined in Tennessee Code Annotated § 23-3-104(a)(1) applies to § 1983 claims.

Plaintiff correctly points out, however, that "the accrual date of a § 1983 cause of action is a

question of federal law that is not resolved by reference to state law."  *Wallace v. Kato*, 549 U.S.

384, 388 (2007).

The accrual date is important, as the parties disagree as to whether Doe's classification as

a violent sexual offender can be considered a continuing violation.  To demonstrate a continuing

violation, a plaintiff must show:

> First, the defendant's wrongful conduct must continue after the precipitating event
> that began the pattern. . . .  Second, injury to the plaintiff must continue to accrue
> after that event.  Finally, further injury to the plaintiff[ ] must have been avoidable
> if the defendants had at any time ceased their wrongful conduct.

*Doe v. Gwyn*, No. 3:17-CV-504, 2018 WL 1957788, at *5 (E.D. Tenn. Apr. 25, 2018) (quoting

*Eidson*, 510 F.3d at 635).  Though the continuing violation theory is "rarely extend[ed] to § 1983

actions," *id.* (quoting *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003)), multiple courts in

this circuit have evaluated claims similar to Doe's and found the theory applicable.  *See id.* at *6

(finding that a plaintiff's ex post facto challenges to SORA, as well as his Due Process claims

related to travel, work, free speech, criminal liability without actual knowledge, and vagueness

and impossibility, were timely based on the continuing violation doctrine); *Doe v. Haslam*, No.

3:16-CV-02862, 2017 WL 5187117, at *13–14 (M.D. Tenn. Nov. 9, 2017) (finding that, when

"Plaintiffs face ongoing and future risk of criminal liability under . . . provisions" of SORA, the

threat of consequences for such future conduct renders the harms ongoing and continuing);

*Tanco v. Haslam*, 7 F. Supp. 3d 759, 767 (M.D. Tenn. 2014), *rev'd sub nom. DeBoer v. Snyder*,

772 F.3d 388 (6th Cir. 2014), *rev'd sub nom. Obergefell v. Hodges*, 576 U.S. 644 (2015) (finding

that, when "a law impinges each day on a plaintiff's constitutional rights, a new limitations

period begins to run each day as to that day's damage") (citation omitted).  These decisions rely

on the conclusion from *Kuhnle Brothers* that "[a] law that works an ongoing violation of

constitutional rights does not become immunized from legal challenge for all time merely

because no one challenges it within [one year] of its enactment."  103 F.3d at 522.

    These cases also acknowledge, however, that "what constitutes a defendant's 'wrongful

conduct' for the purpose of accrual of the statute of limitations is closely related to the nature of

the constitutional protection at issue."  *Haslam*, 2017 WL 5187117, at *12.  So, in both *Haslam*

and *Gwyn*, the courts determined that claims that challenge "a punishment imposed by the

ongoing requirements of the Act" are ongoing violations and thus are subject to the continuing

violation doctrine. *Gwyn*, 2018 WL 1957788, at *6; *see also Haslam*, 2017 WL 5187117, at *14.

In contrast, claims that challenge punishments that are the result of the original imposition of the

Act's requirements are not subject to the continuing violation doctrine. *Gwyn*, 2018 WL

1957788; *Haslam*, 2017 WL 5187117, at *14. In other words, claims premised "on the threat of

significant consequences for future conduct" were timely, but those "premised on some

procedural deprivation that occurred at the time that those requirements were imposed" were not.

*Haslam*, 2017 WL 5187117, at *14. Given this distinction, both courts deemed timely claims

related to the deprivation of the fundamental rights to travel, work, and free speech, whereas the

Due Process challenges to the retroactive application of the Act and that the Act amounts to a

repudiation of the plea agreement were untimely, as they were "directed not at the ongoing

effects of the registration regime requirements on Plaintiffs, but the original imposition of those

requirements." *Haslam*, 2017 WL 5187117, at *14; *see also Gwyn*, 2018 WL 1957788, at *6.

Plaintiff's Count III(a) falls under this latter category and is thus untimely. The claim,

related to Doe's classification as a "violent sexual offender," is one for violation of procedural

Due Process, as he states that "[c]lassification as a 'violent' offender under the Act without

notice and an opportunity to be heard on the issue deprived Plaintiff of a fundamentally fair

adversarial proceeding in violation of his Due Process rights." (ECF No. 27, at 42.)[8]  Doe

challenges not a punishment imposed by the ongoing requirements of the Act, but rather a

---

[8] Though Doe argues in his response that "this categorical classification does in-fact deprive Doe
of protected liberty interests based upon the restrictions, limitations and requirements of the Act
attributable to those individuals who are classified as a 'violent' offender alone" (ECF No. 43, at
9), attempting to morph his claim into one for violation of substantive Due Process, his amended
complaint solely alleges violations of procedural Due Process in Count III(a). (*See* ECF No. 27,
at 41–42.)

punishment resulting from the original imposition of the Act's requirements—that is, the Act's

classification of him as a "violent sexual offender," as opposed to a "sexual offender." That

procedural classification occurred at the time of enactment of SORA; it is not the sort of

continuing and accumulating harm captured by the continuing violation doctrine. Without

benefit of that doctrine, Doe's claim under III(a) is untimely, and it is recommended that

Defendants' motion be granted as to Count III(a).

Moreover, these claims are untimely even assuming Doe did not have knowledge of his

registration obligations in 2004 or could not have been expected to stay abreast of the Act's

many amendments in the years he spent incarcerated. Doe's own complaint demonstrates that he

was aware of his obligations as of January 24, 2019, when he "was given notice that he must

register with the Sumner County Sheriff's Office within forty-eight (48) hours in order to be in

compliance with the Act." (ECF No. 27, at 16.) Doe thus knew or should have known of the

Act's requirements at that time, causing the applicable one-year statute of limitations from

Tennessee Code Annotated § 23-3-104(a)(1) to have run on January 23, 2020. Doe filed his

complaint on March 12, 2021, more than a year later. Because Doe's claims under Counts III(d)

and (e) are untimely and not subject to the continuing violation doctrine or any other means of

tolling, the Court recommends dismissal of those counts.

B.    Protection Against Harsh and Oppressive Retroactive Legislation & Violation of
        Plea Agreement – Counts III(d) & (e)

As with Count III(a), Defendants assert that Doe's claims in Counts III(d) and (e) that the

Act imposes harsh and oppressive retroactive legislation upon him and violates his plea

agreement are barred by the statute of limitations. Defendants assert that "[d]ue process

challenges to retroactivity result from original imposition of the registration requirement, so

Plaintiff's claim is fifteen years overdue." (ECF No. 44, at 3.) Defendants similarly assert that

Doe's cause of action related to his plea agreement "accrued when he was required to register and knew or should have known that he would be required to register."  (ECF No. 40, at 10.)  Plaintiff does not address these statute-of-limitations arguments as to Counts III(d) and (e).  Regardless, Defendants' arguments are well taken.

As discussed above, the continuing violation doctrine is inapplicable to these procedural Due Process claims, as they do not present challenges to "the ongoing effects of the registration regime requirements" on him.  *Haslam*, 2017 WL 5187117, at *14; *see also Gwyn*, 2018 WL 1957788, at *6.  Instead, "[b]oth of these alleged procedural violations occurred at the time the challenged requirements were initially imposed," and, because those requirements were imposed more than one year before Plaintiff filed his lawsuit, dismissal based on untimeliness is warranted.  *Haslam*, 2017 WL 5187117, at *14; *see also Gwyn*, 2018 WL 1957788, at *6.  The Court thus recommends dismissal of Counts III(d) and (e) as well.

C.    Restrictions on Rights to Travel – Count III(b)

Doe asserts that the Act infringes on his fundamental right to travel, both nationally and internationally, as it "does not provide for any individualized considerations before restricting [his] right to travel" and "is not narrowly tailored to serve a compelling state interest and is thus punitive in nature."  (ECF No. 27, at 42.)  Defendants counter that Doe has not alleged that the Act prevents him from engaging in any interstate travel and the Act does not unreasonably restrict his freedom to travel internationally.  (ECF No. 40, at 6–7.)

Though "[t]he word 'travel' is not found in the text of the Constitution . . . the 'constitutional right to travel from one State to another' is firmly embedded in our jurisprudence" and is a "virtually unconditional personal right."  *Saenz v. Roe*, 526 U.S. 489, 498 (1999) (quoting *United States v. Guest*, 383 U.S. 745, 757 (1966)).  That right includes "[t]he right to

13

travel locally throughout public spaces and roadways." *Johnson v. City of Cincinnati*, 310 F.3d 484, 498 (6th Cir. 2002). Whereas "[t]he constitutional right of interstate travel is virtually unqualified . . . , the 'right' of international travel has been considered to be no more than an aspect of the 'liberty' protected by the Due Process Clause of the Fifth Amendment. As such this 'right,' the Court has held, can be regulated within the bounds of due process." *Jackson v. Rausch*, No. 3:19-CV-377, 2020 WL 7496528, at *5 (E.D. Tenn. Dec. 21, 2020) (quoting *Califano v. Aznavorian*, 439 U.S. 170, 176 (1978)); *see also Haslam*, 2017 WL 5187117 at *15 ("[T]he Supreme Court has strongly implied, though it has not explicitly stated, that there is no fundamental right to international travel.") (quoting *Mohamed v. Holder*, No. 1:11CV0050, 2017 WL 3086644, at *7 (E.D. Va. July 20, 2017)). "A state law implicates the right to travel when it actually deters travel, when impeding travel is its primary objective, or when it uses a classification that serves to penalize the exercise of the right." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 535 (6th Cir. 2007) (citing *Att'y Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 903 (1986)). In any event, a burden on travel that is "incidental and negligible" is "insufficient to implicate denial of the right to travel." *Id.* (citing *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 54 (2d Cir. 2007)).

Doe's complaint fails to state a plausible claim that the Act violates his right to interstate, intrastate, or international travel. First, his complaint offers little support for his assertions that the Act infringes on his right to interstate travel. He asserts "he must comply with any applicable sex offender registration laws in other jurisdictions," that "he may have to register as a sex offender in that state," and that, "[b]ecause sex offender registration laws are exceedingly complex and vary from state to state, it is extremely difficult to obtain accurate information about either affirmative reporting obligations (such as registering one's presence in a state) or

14

prohibitions on ordinary behavior (such as visiting a library or park) in other jurisdictions."

(ECF No. 27, at 29.)  Doe fails to explain, however, how Defendants might be liable for Doe's

potential noncompliance with the laws of another state or how the Act is implicated by another

state's laws.  *See Jackson*, 2020 WL 7496528, at *6 ("Plaintiff has presented no allegation or

legal argument as to how Defendant can be liable for Plaintiff's inability to comply with the laws

of other states.").  Doe offers a hypothetical scenario about difficulties he could encounter under

Florida's sex offender registry law if he traveled to that state (ECF No. 27, at 29–30), but those

hypothetical allegations are "purely speculative" and thus "do not allege a plausible claim for

relief."  *Jackson*, 2020 WL 7496528, at *6 (citing *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at

555).

In his response, Doe raises for the first time the argument that the Act infringes on his

intrastate travel rights as well, asserting that it "severely curtails his right to travel locally" "by

banning where he may live, work, or merely be for an extended time."  (ECF No. 43, at 11.)

Doe's newly asserted claims regarding intrastate travel are infirm for multiple reasons.  At the

outset, "[t]he Court is limited to the claims raised in the pleadings."  *Lubinski v. Hub Grp.*

*Trucking, Inc.*, No. 2:14-cv-02843-JPM-dkv, 2015 WL 10732716, at *5 (W.D. Tenn. Sept. 22,

2015), *aff'd*, 690 F. App'x 377 (6th Cir. 2017) (citing *Johnson v. Metro. Gov't of Nashville &*

*Davidson Cnty., Tenn.*, 502 F. App'x 523, 541–42 (6th Cir. 2012)).  "The [C]ourt may not, for

example, take into account additional facts asserted in a memorandum opposing the motion to

dismiss, because such memoranda do not constitute pleadings under Rule 7(a)."  *Id.* (quoting 2

Moore's Federal Practice § 12.34 (Matthew Bender 3d. ed.)).  Because Plaintiff raised his

intrastate travel claims for the first time in his response, they are inappropriately before the Court

and are dismissible on that basis.

Those contentions also fail to state a claim upon which relief can be granted. As explained in *Haslam*, the Exclusion Zones established in the Act "are not restrictions on what areas a registered offender may pass through, but on what he can do within those areas. They accordingly do not, on their faces, directly restrict or significantly burden the right to local travel." 2017 WL 5187117, at *16. Doe asserts that the Act bans where he may live, work, or merely be for an extended period of time (ECF No. 43, at 11), but each of those acts is distinguishable from infringing on his right to pass through any area within the State of Tennessee while traveling. Accordingly, to the extent Plaintiff asserts a claim that the Act infringes his right to intrastate travel, that claim should also be dismissed.

Finally, although Doe's complaint asserts that the Act infringes upon his right to international travel in multiple ways, none of those claims sufficiently state a claim for relief. Doe first takes issue with the requirement that he provide at least twenty-one days' notice before traveling out of the country. *See* Tenn. Code Ann. § 40-39-204(h). While acknowledging that statutes that only incidentally affecting international travel are governed by rational scrutiny, Doe contends that "a higher level of scrutiny is warranted for direct restrictions on international travel." (ECF No. 43, at 11.) He argues that, although the Supreme Court has not made clear what level of scrutiny is applicable, "the nature and purpose of the restriction must be proportionate to the restriction." (*Id.*) Ultimately, Doe argues that the "infringements on his right to travel are not proportionate to any legitimate government purpose." (*Id.* at 12.)

The Court is bound by the Supreme Court's "caution[] . . . that it has 'always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.'" *Michigan Dep't of State Police*, 490 F.3d at 500 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). As

explained above, the right to international travel does not enjoy the same level of constitutional protection as the virtually unfettered right to interstate travel. *Jackson*, 2020 WL 7496528, at *5; *Haslam*, 2017 WL 5187117, at *16 (quoting *Califano*, 439 U.S. at 176). The court in *Haslam* acknowledged the lack of clarity regarding the level of constitutional protection afforded to interstate travel and determined that, "[i]nsofar as the Court recognizes a constitutional right to international travel, that right is not so highly protected that it is violated by the passage of a 21-day notification requirement based on the important public purposes underlying the Act." 2017 WL 5187117, at *16. That analysis, based on the same arguments Doe raises here, applies with equal force in this matter. The twenty-one-day notification requirement is sufficiently tailored to satisfy strict scrutiny and certainly satisfies the more forgiving rational basis analysis applied to Due Process claims that do not involve fundamental rights.

Doe also asserts that his right to travel internationally is infringed upon because he "must plan his travel so that he is able to register in person quarterly," consistent with Tennessee Code Annotated § 40-39-204(b). (ECF No. 27, at 28; ECF No. 43, at 12.) Under that quarterly reporting requirement, however, Doe may still travel internationally for months at a time. The requirement that he return to Tennessee quarterly to register in person is the sort of incidental burden that does not rise to the level of implicating a denial of Doe's right to travel. *See League of United Latin Am. Citizens*, 500 F.3d at 535.

Doe also asserts that the requirement that he register as a sex offender in Tennessee "will likely bar him from traveling anywhere else in the world for the remainder of his life," based in part on the "International Megan's Law to Prevent Child Exploitation and Other Sexual Crimes Through Advanced Notification of Traveling Sex Offenders," which he asserts "generally authorizes the federal government to give 'advance notice' to a foreign country when

a registered sex offender is traveling to that country" and "makes it a federal crime for a registered sex offender to fail to report information on intended international travel." (ECF No. 27, at 28.) As with his interstate travel claims based on the laws of other states, Doe fails to assert how Defendants could be held liable for his noncompliance with federal laws governing sexual offenders—or, for that matter, for a foreign country's decision not to admit registered sex offenders. Furthermore, in *Jackson*, where the plaintiff offered the same assertion that "[i]t is almost certain" that he would "be prohibited from entering another country" and that he would "likely be barred from traveling anywhere else in the world," the court found the allegations "purely" speculative and based "solely on hypothetical situations." 2020 WL 7496528, at *5–6. The same is true here—even if travel deprivations derived from a federal law and based on determinations made by foreign entities could be tied to Defendants, Doe's claims once again do not rise above speculation and thus do not state a plausible claim for relief. *See id.*; *see also Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Accordingly, it is recommended that Plaintiff's claim that his rights to travel—whether intrastate, interstate, or international—be dismissed for failure to state a claim upon which relief can be granted.

D.    Restrictions on Right to Work – Count III(c)

Doe contends that the Act substantially interferes with his right to engage in the common occupations of life, a fundamental right protected by the Due Process Clause of the Fourteenth Amendment. (ECF No. 27, at 43.) He asserts that the Act serves as an employment barrier that "is not based on [his] fitness or capacity to work in the jobs from which he has been excluded," "does not provide for any individualized consideration before restricting [his] ability to engage in the common occupations of life," and "violates [his] fundamental right to engage in the common

occupations of life because it is not narrowly tailored to serve a compelling state interest." (*Id.*) Defendants counter that the Act's restrictions on employment do not involve fundamental rights and therefore are subject to only rational review. (ECF No. 40, at 8.)

In evaluating a similar claim under SORMA, the predecessor to SORA, the Sixth Circuit explained that "[c]ourts recognizing a constitutionally protected right to employment have done so in very limited circumstances and have dealt with terminations of government employment where either state law or an agreement between the parties purports to limit the ability of the government to terminate the employment." *Cutshall v. Sundquist*, 193 F.3d 466, 479 (6th Cir. 1999). Doe cites multiple out-of-circuit cases that speak to a clearly established constitutional right to private employment. *See, e.g.*, *DiMartini v. Ferrin*, 906 F.2d 465, 466 (9th Cir. 1990); *Lester v. Parker*, 235 F.2d 787, 788 (9th Cir. 1956); *Waddell v. Forney*, 108 F.3d 889, 893 (8th Cir. 1997). However, Doe does not cite, and the Court has not identified, any Sixth Circuit precedent that would suggest that the right to private employment is a fundamental right that would be evaluated with strict scrutiny under the Due Process Clause.

In fact, other SORA cases have found that rational basis scrutiny is applicable to these types of claims. *See, e.g.*, *Newsome*, 2021 WL 1697039, at *6 (finding that being denied an employment opportunity due to being placed on the sex offender registry is not a deprivation of a protected interest that triggers heightened review); *Brown*, 2020 WL 7864252 (same); *Jackson*, 2020 WL 7496528, at *6 (E.D. Tenn. Dec. 21, 2020) (concluding that there is no general right to private employment and dismissing the plaintiff's claims where there was no alleged termination of a government employment); *Haslam*, 2017 WL 5187117, at *16 (agreeing with the reasoning from *John Does 1-4 v. Snyder*, 932 F. Supp. 2d 803, 817 (E.D. Mich. 2013) (Cleland, J.), which concluded that "there is no 'general right to private employment'") (quoting *Cutshall*, 193 F.3d

at 479). The Court agrees with these cases within the Sixth Circuit holding that rational basis scrutiny applies to Doe's work-related Due Process claims.

Not surprisingly, given the deferential approach that accompanies rational basis review, courts applying that standard to claims of employment deprivation have concluded that the Act clears this low hurdle. *See Newsome*, 2021 WL 1697039, at *7 (collecting cases that support the conclusion that similar sex offender restrictions survive rational basis review because plausible purposes for the laws can be articulated); *Haslam*, 2017 WL 5187117, at *16 (explaining that the Act's employment restrictions "'serve the legitimate interest of the State of inhibiting future sexual offenses, particularly against children, while not limiting the ability of Plaintiffs to seek and obtain any type of employment' that does not require Plaintiffs to come into contact with children (such as a clown at a birthday party or an ice cream truck driver)"). Ultimately, as the court in *Cutshall* explained, "[a] charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation." 193 F.3d at 479 (quoting *Gregory v. Hunt*, 24 F.3d 781, 788 (6th Cir. 1994)). The Court sees no reason to deviate from the approach taken by the many decisions concluding that the Act's employment restrictions—and other similar legislation—satisfy rational basis review. Accordingly, it is recommended that Plaintiff's Due Process claim related to his employment be dismissed.

     E.    <u>Imposition of Criminal Liability Absent Actual Knowledge – Count III(f)</u>

Doe asserts that the Act also "violates the Due Process Clause because it imposes criminal liability for purely passive acts that are not mala in se, and therefore do not 'alert the doer to the consequences of his deed,' without any proof of 'actual knowledge of the duty to [to [sic] comply with the law] or proof of the probability of such knowledge and subsequent failure

20

to comply.'" (ECF No. 27, at 5 (quoting *Lambert v. People of the State of Cal.*, 355 U.S. 225,

228–229 (1957)).) Doe alleges that the passive conduct encompassed within the Act includes,

but is not limited to, a prohibition against him working, loitering, or residing within an Exclusion

Zone. (*Id.* at 44–45.) He asserts that, "[b]ecause the Act punishes otherwise innocent conduct

without requiring the state to prove that the defendant knew his conduct was illegal, the Act

violates the Due Process Clause under Lambert." (ECF No. 43, at 19.) Defendants counter that

"[t]he Act does not punish passive behavior because it contains a scienter requirement." (ECF

No. 40, at 11.) Ultimately, Defendants argue, Doe's criminal liability under the Act "hinge[s] on

whether he was aware of his conduct." (*Id.*)

In support of his argument, Doe relies on *Lambert* and *Stanley v. Turner*, 6 F.3d 399 (6th

Cir. 1993). In *Lambert*, the Supreme Court struck down a Los Angeles ordinance prohibiting

"'any convicted person' to be or remain in Los Angeles for a period of more than five days

without registering." 355 U.S. 226. The Court concluded that, "[w]here a person did not know

of the duty to register and where there was no proof of the probability of such knowledge, he

may not be convicted consistently with due process." *Id.* at 229–30. The *Stanley* court relied in

part on *Lambert* in its evaluation of Ohio's involuntary manslaughter statute as applied to an

automobile accident case and explained that, "where an offense is defined without a formal

element of intent, and where the offense involves conduct for which one would not ordinarily be

blamed, the Court might well find that a defendant could not be convicted of the offense without

violating the Due Process Clause." *Id.* at 404.

The restrictions Doe complains of are contained in Tennessee Code Annotated § 40-39-

211. Those provisions, which govern, among other things, where sexual and violent sexual

offenders are permitted to live, work, be, remain, and stand or sit idly, prohibit "knowing"

actions.  Tenn. Code Ann. § 40-39-211(a)(1) (prohibiting "knowingly establish[ing] a primary or

secondary residence . . . or knowingly accept[ing] employment" near schools and other places

children are likely to be); § 40-39-211(b) (prohibiting knowingly residing near or coming into

contact with victims); § 40-39-211(d) (prohibiting, with certain exceptions, knowingly being in

schools, playgrounds, and other areas children are likely to be present).  Each provision contains

a formal element of intent, bringing them outside of the scope of the exception delineated in

*Lambert*.

Other courts interpreting SORA have rejected similar challenges due to the knowledge

element of the statute.  As explained in *Rausch*, "by language of the statute, criminal liability

only arises if Plaintiff knowingly takes up residence in, undertakes employment in, or loiters in

the specified areas."  461 F. Supp. 3d at 775 (citing Tenn. Code Ann. § 40-39-211).  Under the

Tennessee Criminal Code, "knowing" refers to "'a person who acts knowingly with respect to

the conduct or to circumstances surrounding the conduct when the person is aware of the nature

of the conduct or that the circumstances exist.'"  *Id.* (quoting Tenn. Code Ann. § 39-11-302(b)).

Thus, the plaintiff failed to demonstrate that the Act imposed criminal liability for "wholly

passive" conduct.  *Id.*; *see also Jackson*, 2021 WL 5365778, at *6 (relying on precisely the same

code provisions and rationale to conclude the same).

Doe's suggestion that the Act punishes passive conduct disregards the mens rea

requirements found throughout the provisions of the Act he is challenging.  The offenses clearly

contain formal elements of intent and therefore cannot be said to impose criminal liability upon

Doe without his actual knowledge that the conduct was illegal.  It is recommended that Doe's

claim under that theory also be dismissed.

III.    **Doe's Eighth Amendment Claims**

In Count V, Doe asserts that the Act inflicts cruel and unusual punishment upon him, in

contravention of the Eighth Amendment.  (ECF No. 27, at 46.)  He alleges that he is "subject to

significant minimum criminal[ ]penalties for non-criminal conduct" and "was in-fact subjected to

cruel and unusual punishment by arrest and conviction[ ]for an unknowing, unintended

retroactive technical violation of the Act."  (*Id.*)

Defendants assert that Doe's claims fail for multiple reasons.  First, they argue that the

Act contains a scienter requirement, criminalizing only "knowing violations," which undermines

Doe's contention that it punishes unknowing or unintended conduct.  (ECF No. 40, at 12.)

Defendants also assert that, because states have the authority to criminalize conduct to protect

the public, the restrictions set forth in the Act, including the associated penalties, are within the

scope of the State's police power.  (*Id.* at 13.)  Defendants assert that because the Act punishes

an accused's conduct, rather than his condition, it does not violate the Eighth Amendment's

prohibition against cruel and unusual punishment.  (*Id.*)

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive

fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  "[T]o

violate the cruel and unusual punishment prohibition, a sanction must be *punishment*."  *Willman*

*v. Att'y Gen. of U.S.*, 972 F.3d 819, 825 (6th Cir. 2020) (citing *Cutshall*, 193 F.3d at 477)

(discussing the plausibility of an Eighth Amendment challenge to the federal sex offender

registry law).  Based on that requirement of punitive sanctions, district courts have dismissed

Eighth Amendment challenges to SORA based on Sixth Circuit precedent holding that "SORA is

a civil, regulatory statute that does not impose criminal punishment."  *Brown*, 2020 WL 7864252

(citing *Doe v. Bredesen*, 507 F.3d 998, 1004 (6th Cir. 2007); *Cutshall*, 193 F.3d at 477); *see also*

*Burns v. Helper*, No. 3:18-CV-01231, 2019 WL 5987707, at *7 (M.D. Tenn. Oct. 24, 2019),

*report and recommendation adopted*, No. 3:18-CV-01231, 2019 WL 5964546 (M.D. Tenn. Nov.

13, 2019) (same).

Recent opinions have found, however, that SORA may be characterized as punitive. *Doe*

*v. Lee*, 518 F. Supp. 3d 1157, 1204 (M.D. Tenn. 2021); *Reid v. Lee*, 476 F. Supp. 3d 684, 705

(M.D. Tenn. 2020); *Gwyn*, 2018 WL 1957788, at *8; *Haslam*, 2017 WL 5187117, at *20.[9]

Those cases rely on *Doe v. Snyder*, in which the Sixth Circuit, considering a Michigan statute

similar to SORA, found that the law was punitive in nature because it "meets the general

definition of punishment," its restrictions are "onerous," it "advances all the traditional aims of

punishment" without having a clear impact on recidivism (the primary nonpunitive purpose of

the law), and "[t]he punitive effects of [its] blanket restrictions . . . far exceed even a generous

assessment of their salutary effects." 834 F.3d 696, 703–05 (6th Cir. 2016). The cases also

recognize that the binding Sixth Circuit cases deeming SORA nonpunitive are based on prior

versions of the Act and thus do not prohibit reconsideration under *Snyder*. *See Reid*, 476 F.

Supp. 3d at 706 ("The Sixth Circuit, in *Snyder*, did not overrule its earlier cases, but it did make

clear that *Doe v. Bredesen* should not be viewed as mandating a rubber stamp for more

restrictive registration regimes."). Based on that conclusion, "this becomes an easy case, at least

with regard to the motions to dismiss," as "[v]irtually every observation that the Sixth Circuit

---

[9] These cases discuss the punitive nature of SORA in the context of ex post facto challenges.
Whether the Act violates the Ex Post Facto Clause is a separate inquiry and, although Plaintiff
has raised claims under that provision of the Constitution, they are not a subject of the motion
presently before the Court. The Sixth Circuit has, however, indicated that the analysis of the
punitive nature of the legislation is the same in the ex post facto and Eighth Amendment
contexts. *See Willman*, 972 F.3d at 825 (finding that, because the federal sex offender registry
law "is not a punishment for purposes of the Ex Post Facto Clause," "[i]t follows, therefore, that
[the law] is not punishment for purposes of the Eighth Amendment either").

made about the Michigan regime could be made about the Act with, at most, minimal tweaking." *Id.*; *see also Lee*, 518 F. Supp. 3d at 1183–1204 (applying the factors considered in *Snyder* in a thorough evaluation of SORA and finding it punitive as applied to the plaintiffs in that case). As such, plaintiffs are "entitled to pursue discovery in an attempt to establish that Tennessee's system is just as faulty as Michigan's." *Reid*, 476 F. Supp. 3d at 706; *see also Haslam*, 2017 WL 5187117, at *20 ("At this stage in the proceedings, the Court simply cannot know the full extent of the Act's effects and therefore cannot reach a conclusion on whether those effects are punitive under the rubrics set forth in *Snyder*.").

The sound reasoning of these courts is applicable in this case.[10] Because SORA may be deemed punitive, notwithstanding *Bredesen*, and because Doe has alleged that his incarceration may constitute the sort of cruel and unusual punishment prohibited by the Eighth Amendment, he is entitled to develop his theory through discovery. It is therefore recommended that Defendant's motion to dismiss Count V be DENIED.

---

[10] In *Newsome*, another SORA case, the court ultimately concluded that the plaintiff's injuries did "not rise to the level of 'wanton' infliction of pain required for an Eighth Amendment violation." 2021 WL 1697039, at *6 (citing *Gebreneguesse v. Heyns*, No. 2:16-CV-12804, 2017 WL 9470792, at *4 (E.D. Mich. Apr. 26, 2017), *report and recommendation adopted*, No. 16-12804, 2017 WL 3224968 (E.D. Mich. July 31, 2017), *aff'd*, No. 17-2055, 2018 WL 4278568 (6th Cir. Apr. 20, 2018), (citing *Johnson v. Owens*, 612 F. App'x 707, 718 (5th Cir. 2015)) (concluding that a parolee had not stated an Eighth Amendment claim based on a requirement to participate in sex offender therapy); *Walp v. Quarterman*, No. 3-08-cv-605, 2008 WL 5099940, at *2 (N.D. Tex. Dec. 1, 2008) ("[T]he United States Supreme Court has never issued an opinion which holds that the Eighth Amendment can be violated by a prisoner's release on parole.")). *Newsome* is distinguishable, however, as the complaint did "not allege that Plaintiff has suffered any injury from being placed on the SOR other than the loss of housing and employment opportunities. For example, the Complaint does not allege that Plaintiff has been fined or incarcerated for failure to comply with SORA requirements." *Id.* In contrast, here Plaintiff has pled that he was jailed for failing to comply with the Act. (ECF No. 27, at 17.)

## <u>RECOMMENDATION</u>

For the foregoing reasons, this Court recommends that the Motion to Dismiss in Part be

GRANTED IN PART AND DENIED IN PART.

Respectfully submitted this 25th day of August, 2022.

s/Annie T. Christoff
ANNIE T. CHRISTOFF
UNITED STATES MAGISTRATE JUDGE

## NOTICE

Within fourteen (14) days after being served with a copy of this report and recommendation
disposition, a party may serve and file written objections to the proposed findings and
recommendations.  A party may respond to another party's objections within fourteen (14) days
after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Failure to file objections within
fourteen (14) days may constitute waiver of objections, exceptions, and further appeal.