IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| JOHN DOE, a/k/a SEAN W. LEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:21-cv-02156-SHL-atc |
| ) | |
| WILLIAM LEE, Governor of the State of ) | |
| Tennessee, and DAVID B. RAUSCH, ) | |
| Director of the Tennessee Bureau of ) | |
| Investigation, ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION TO
GRANT IN PART AND DENY IN PART MOTION TO AMEND**

Before the Court by order of reference[1] is Plaintiff John Doe, a/k/a Sean W. Lee's motion for leave to file a second amended complaint, filed October 6, 2022. (ECF No. 60.) Defendants William Lee, Governor of the State of Tennessee, and David B. Rausch, Director of the Tennessee Bureau of Investigations, filed a response to that motion (ECF No. 61) and, with leave of Court, Plaintiff a reply (ECF No. 66). For the reasons stated below, it is recommended that the motion be GRANTED IN PART AND DENIED IN PART.

**PROPOSED FINDINGS OF FACT**

On August 25, 2022, the undersigned submitted a Report and Recommendation (the "R&R," ECF No. 52) to Grant in Part and Deny in Part Defendants' partial motion to dismiss

---

[1] Pursuant to ECF No. 13, this case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

(ECF No. 40). That motion sought to dismiss several of the claims in Doe's First Amended Complaint, which challenges the constitutionality of the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act of 2004 ("SORA" or the "Act"), as amended, on several grounds.

The R&R recommended that Defendants' motion to dismiss be granted as to Doe's Due Process claims found in Counts III(a)–(f), as they are either untimely or fail to state a claim upon which relief could be granted, or both. (ECF No. 52, at 9–25.) The R&R also recommended that Defendants' motion to dismiss be denied as to Doe's Count V claim for violations of the Eighth Amendment. (*Id.* at 23–25.)

Defendants filed objections to the R&R on September 20, 2022 (ECF No. 55), and Doe filed his objections two days later (ECF No. 56). Doe responded to Defendants' objections on October 3, 2022 (ECF No. 57), and Defendants filed their response to Doe's objections the next day (ECF No. 58).

Doe now seeks leave to file a Second Amended Complaint, so that he may "allege additional causes of action arising from a recent decision from the Court of Common Pleas in Chester County, Pennsylvania." (ECF No. 60, at 3.) He asserts "that the proposed amendments include additional arguments and allegations related to the punitive nature of the act under" the factors laid out in *Kennedy v. Mendoza-Martinez*, 372 US 144 (1963). (*Id.*) That argument, according to Doe, "is a supplementation of the argument set forth in Count 5 of the Complaint alleging the Act inflicts cruel and unusual punishment. In addition, the amendment seeks to add a sixth count asserting that the act as applied to Plaintiff, damages his reputation." (*Id.*) The proposed Second Amended Complaint thus seeks to amend Count V and add a new Count VI. (ECF No. 60-1.)

2

Defendants argue that the motion to amend should be denied as futile. They assert that Counts III(a)–(f), which are unchanged from the First Amended Complaint, are subject to dismissal for the reasons stated in the R&R. (ECF No. 61, at 3.) Additionally, though Defendants' response does not address Doe's proposed supplementation of Count V, they previously argued in their objections to the R&R that Count V should be dismissed because Doe does not allege that SORA is punitive, but even if he did, that claim should nevertheless be dismissed because "[a] statute does not violate the Eighth Amendment simply because it is punitive." (ECF No. 55, at 3–4 (citing *Chapman v. United States*, 500 U.S. 453, 465 (1991).) Defendants do not address Doe's proposed new Count VI at all.

In his Reply, Doe states that he "takes no issue with those three specific sub counts (Counts III (b), (c) and (f)) being stricken from the operative complaint." (ECF No. 66, at 1.) However, he asserts that "Defendants have failed to raise any objection to the substantive amendments or allege any actual prejudice by the granting of the motion as it relates to Counts V and VI." (*Id.* at 2.)

In summary, Doe does not seek to amend, and Defendants have not sought dismissal of, Counts I, II, III(g), and IV, and those counts shall remain in the operative complaint in this case. Doe has also conceded that Counts III(b), (c), and (f) shall not. The claims remaining in dispute are III(a), (d), and (e), V, and VI.

## PROPOSED CONCLUSIONS OF LAW

I.  **Standard of Review for Amending Pleadings**

"[M]otions for leave to amend are reviewed under the deferential standard of Federal Rule of Civil Procedure 15, and the Court 'should freely give leave when justice so requires.'" *Porter v. AAR Aircraft Servs., Inc.*, 316 F.R.D. 691, 692 (W.D. Tenn. 2016) (quoting Fed. R.

Civ. P. 15(a)(2)). An exception to this forgiving standard is when a proposed amendment is futile. *Id.* (citing *Pedreira v. Ky. Baptist Homes for Child., Inc.*, 579 F.3d 722, 729 (6th Cir. 2009)); *see also Foman v. Davis*, 371 U.S. 178, 182, (1962). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Berry v. Regions Fin. Corp.*, 507 F. Supp. 3d 972, 977 (W.D. Tenn. 2020), *appeal dismissed*, No. 21-5038, 2021 WL 1511687 (6th Cir. Jan. 29, 2021) (quoting *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010)). Denial of a motion to amend also "is appropriate where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" *Joy v. Burchyett*, No. 1:21-cv-01190-STA-jay, 2022 WL 16787846, at *2 (W.D. Tenn. Nov. 8, 2022) (quoting *Benzon v. Morgan Stanley Distribs., Inc.*, 420 F.3d 598, 613 (6th Cir. 2005)).

## II.   Doe's Motion to Amend

Doe's motion to amend effectively moots the R&R. Thus, the analysis herein will address the parties' original arguments regarding dismissal of the First Amended Complaint, arguments raised in objection to the R&R, and arguments now presented on the motion to amend.

### A.   Doe's Due Process Claims Under Counts III(a), (d), and (e) Are Untimely

Count III of Doe's Second Amended Complaint alleges the Act violates Doe's Due Process rights in three ways relevant here: by classifying him as a violent offender, by retroactively imposing the Act on him, and in constituting a breach of his plea agreement.

"Under the Fourteenth Amendment, "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir.

4

2014) (quoting U.S. Const. amend. XIV, § 1). "The due process clause has both procedural and substantive components." *Id.* (citing *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012)). Procedural Due Process provides a guarantee of fair procedure. *Brown v. Bd. of Educ. of Shelby Cnty. Sch.*, 47 F. Supp. 3d 665, 678–79 (W.D. Tenn. 2014) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)).

Substantive Due Process, on the other hand, "prohibits States from infringing fundamental liberty interests, unless the infringement is narrowly tailored to serve a compelling state interest." *Id.* at 678 (quoting *Lawrence v. Texas*, 539 U.S. 558, 593 (2003)). "The interests protected by substantive due process are . . . much narrower than those protected by procedural due process." *Bell v. Ohio State Univ.*, 351 F.3d 240, 249–250 (6th Cir. 2003). "When reviewing a substantive due process claim," courts "first craft a careful description of the asserted right and then determine whether that right is deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty, such that it can be considered a fundamental right." *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 500 (6th Cir. 2007) (internal citations and quotations omitted). "Legislation that infringes on a fundamental right is reviewed under the strict-scrutiny test and will be invalidated unless it is 'narrowly tailored to serve a compelling state interest.'" *Id.* (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993)). At the same time, "'[l]egislation that does not proscribe fundamental liberties . . . violates the Due Process Clause' where it imposes burdens without any 'rational basis' for doing so." *Am. Exp. Travel Related Servs. Co. v. Kentucky*, 641 F.3d 685, 689 (6th Cir. 2011) (quoting *Sheffield v. City of Fort Thomas, Ky.*, 620 F.3d 596, 613 (6th Cir. 2010)). "This rational basis test, though not toothless, is highly deferential; courts hold statutes unconstitutional under this standard of review only in rare or exceptional circumstances." *Id.* (internal citations and quotations omitted).

Under rational basis review, "the law must be upheld if there is 'any plausible reason' for its passage, 'no matter how unfair, unjust, or unwise.'" *Newsome v. Lee*, No. 3:21-CV-00041, 2021 WL 1697039, at *7 (M.D. Tenn. Apr. 29, 2021) (quoting *DeBoer v. Snyder*, 772 F.3d 388, 404 (6th Cir. 2014), *rev'd sub nom. Obergefell v. Hodges*, 576 U.S. 644 (2015)).

As discussed in the R&R, Counts III(a), (d), and (e) are untimely. Because Plaintiff's claim is brought pursuant to 42 U.S.C. § 1983, state law provides the statute of limitations applicable to the claim. *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) ("The statute of limitations applicable to a § 1983 action is the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises.") (citing *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 519 (6th Cir. 1997)).) In Tennessee, the one-year statute of limitations for personal injury actions outlined in Tennessee Code Annotated § 23-3-104(a)(1) applies to § 1983 claims. However, "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007).

Federal law contemplates that certain conduct may constitute a continuing violation, warranting a tolling of the statute of limitations as long as the violation continues. *Doe v. Rausch*, No. 1:22-cv-01131-STA-jay, 2023 WL 25734, at *14 (W.D. Tenn. Jan. 3, 2023) (citing *Doe v. Haslam*, No. 3:16-CV-02862, 2017 WL 5187117, at *10 (M.D. Tenn. Nov. 9, 2017)). To demonstrate a continuing violation, a plaintiff must show:

> First, the defendant's wrongful conduct must continue after the precipitating event that began the pattern. . . . Second, injury to the plaintiff must continue to accrue after that event. Finally, further injury to the plaintiff[ ] must have been avoidable if the defendants had at any time ceased their wrongful conduct.

*Doe v. Gwyn*, No. 3:17-CV-504, 2018 WL 1957788, at *5 (E.D. Tenn. Apr. 25, 2018) (quoting *Eidson*, 510 F.3d at 635). Though the continuing violation theory is "rarely extend[ed] to § 1983

6

actions," *id.* (quoting *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003)), multiple courts in this circuit have evaluated claims similar to Doe's and found the theory applicable. *See id.* at *6 (finding that a plaintiff's ex post facto challenges to SORA, as well as his Due Process claims related to travel, work, free speech, criminal liability without actual knowledge, and vagueness and impossibility, were timely based on the continuing violation doctrine); *Haslam*, No. 2017 WL 5187117, at *13–14 (finding that, when "Plaintiffs face ongoing and future risk of criminal liability under . . . provisions" of SORA, the threat of consequences for such future conduct renders the harms ongoing and continuing); *Tanco v. Haslam*, 7 F. Supp. 3d 759, 767 (M.D. Tenn. 2014), *rev'd sub nom. DeBoer v. Snyder*, 772 F.3d 388 (6th Cir. 2014), *rev'd sub nom. Obergefell v. Hodges*, 576 U.S. 644 (2015) (finding that, when "a law impinges each day on a plaintiff's constitutional rights, a new limitations period begins to run each day as to that day's damage") (citation omitted). These decisions rely on the conclusion from *Kuhnle Brothers* that "[a] law that works an ongoing violation of constitutional rights does not become immunized from legal challenge for all time merely because no one challenges it within [one year] of its enactment." 103 F.3d at 522.

These cases also acknowledge, however, that "what constitutes a defendant's 'wrongful conduct' for the purpose of accrual of the statute of limitations is closely related to the nature of the constitutional protection at issue." *Haslam*, 2017 WL 5187117, at *12. So, in both *Haslam* and *Gwyn*, the courts determined that claims that challenge "a punishment imposed by the ongoing requirements of the Act" are ongoing violations and thus are subject to the continuing violation doctrine. *Gwyn*, 2018 WL 1957788, at *6; *see also Haslam*, 2017 WL 5187117, at *14. In contrast, claims that challenge punishments that are the result of the original imposition of the Act's requirements are not subject to the continuing violation doctrine. *Gwyn*, 2018 WL

7

1957788; *Haslam*, 2017 WL 5187117, at *14. In other words, claims premised "on the threat of significant consequences for future conduct" were timely, but those "premised on some procedural deprivation that occurred at the time that those requirements were imposed" were not. *Haslam*, 2017 WL 5187117, at *14. Given this distinction, both courts deemed timely claims related to the deprivation of the fundamental rights to travel, work, and free speech, whereas the Due Process challenges to the retroactive application of the Act and that the Act amounts to a repudiation of the plea agreement were untimely, as they were "directed not at the ongoing effects of the registration regime requirements on Plaintiffs, but the original imposition of those requirements." *Haslam*, 2017 WL 5187117, at *14; *see also Gwyn*, 2018 WL 1957788, at *6.

Plaintiff's Counts III(a), (d), and (e) fall under this latter category and are thus untimely. Count III(a), related to Doe's classification as a "violent sexual offender," is one for violation of procedural Due Process, as he states that "[c]lassification as a 'violent' offender under the Act without notice and an opportunity to be heard on the issue deprived Plaintiff of a fundamentally fair adversarial proceeding in violation of his Due Process rights." (ECF No. 60-1, at 46.) Doe challenges not a punishment imposed by the ongoing requirements of the Act, but rather a punishment resulting from the original imposition of the Act's requirements—that is, the Act's classification of him as a "violent sexual offender," as opposed to a "sexual offender." That procedural classification occurred at the time of enactment of SORA; it is not the sort of continuing and accumulating harm captured by the continuing violation doctrine.

The continuing violation doctrine is similarly inapplicable to Counts III(d) and (e), as they do not present challenges to "the ongoing effects of the registration regime requirements" on him. *Haslam*, 2017 WL 5187117, at *14; *see also Gwyn*, 2018 WL 1957788, at *6. Instead, "[b]oth of these alleged procedural violations occurred at the time the challenged requirements

8

were initially imposed," and, because those requirements were imposed more than one year before Plaintiff filed his lawsuit, allowing an amended complaint to include those causes of action would be futile.

Moreover, these claims are untimely even assuming Doe did not have knowledge of his registration obligations in 2004 or could not have been expected to stay abreast of the Act's many amendments in the years he spent incarcerated. Doe's own complaint demonstrates that he was aware of his obligations as of January 24, 2019, when he "was given notice that he must register with the Sumner County Sheriff's Office within forty-eight (48) hours in order to be in compliance with the Act." (ECF No. 60-1, at 16.) Doe thus knew or should have known of the Act's requirements at that time, causing the applicable one-year statute of limitations from Tennessee Code Annotated § 23-3-104(a)(1) to have run on January 23, 2020. Doe filed his original complaint on March 12, 2021, more than a year later. That knowledge renders these claims legally insufficient.

In his objections to the R&R, Doe asserts that his claims under Counts III(a), (d), and (e), are properly characterized as continuing violations and are thus timely asserted. Doe argues that, at the very least, his due process rights are violated each quarter when he has to re-register as a sex offender, as "he must confirm that he is a violent offender every time he updates his registration." (ECF No. 56, at 3.) So, according to Doe, because "[e]ach registration is an adjudication of his status," it violates his Due Process rights. (*Id.*) Doe asserts that these mandated quarterly registrations not only violate his Due Process rights in terms of his being characterized as a violent sexual offender, as he alleges in Count III(a), but also because it impermissibly subjects him to SORA's retroactive nature, as he alleges in Count III(d), and constitutes a breach of his plea agreement, as he alleges in Count III(e). (*Id.* at 4.) Doe also

9

asserts that, contrary to the conclusion in the R&R, each of these claims also state a substantive due process claim. He argues that he "makes specific claims to how he is substantively punished time and time again under the continuing requirements of SORA throughout the Amended Complaint," and, "[w]hile maybe not most artfully articulated, the First Amended Complaint includes a sufficient factual basis to support both a procedural and substantive due process claim." (*Id.* at 5.)

Defendants counter that Counts III(a), (d), (e) are challenges "to alleged deprivations that are directly attributable to a specific point in the underlying proceedings," which "are precisely the type of procedural actions that trigger the statute of limitations." (ECF No. 58, at 2.) Moreover, to the extent Doe alleges substantive Due Process violations, Defendants assert that he "has not identified which substantive due process right is purportedly violated, much less how the Complaint could be construed as alleging such a violation. And a 'legal memorandum is not the correct method to supplement a complaint.'" (*Id.* at 3 (quoting *Mangum v. Lee*, No. 21-2637-SHM-tmp, 2022 WL 2833989, at *1 n.4 (W.D. Tenn. July 20, 2022), *appeal filed*, No. 22-5660 (6th Cir. Aug. 1, 2022)).)

Plaintiff's contentions that his procedural Due Process rights are violated upon every act of registration, thus constituting a continuing violation that tolls the statute of limitations, is, for the reasons discussed above, unpersuasive. Each of those claims "accrued at the time the challenged requirements were initially imposed, more than one year prior to the initiation of this case," are not subject to the continuing violations doctrine, and are thus untimely. *Gwyn*, 2018 WL 1957788, at *6; *see also Haslam*, 2017 WL 5187117, at *14.

Moreover, each quarterly act of registration is not, as Doe argues, a fresh adjudication of his status as a violent offender, such that the absence of a hearing could constitute a violation of

10

his Due Process rights. As Defendants assert, "Plaintiff does not cite to any provision in the Act requiring Plaintiff 'confirm' he is a violent sexual offender." (ECF No. 58, at 3.) None exists; instead, the reporting requirement for violent sexual offenders functions as a means for ensuring that the data repository maintained by the TBI remains updated. *See* Tenn. Code Ann. § 40-39-204(b)(1) (requiring quarterly in-person reporting "to update the offender's fingerprints, palm prints and photograph, as determined necessary by the agency, and to verify the continued accuracy of the information in the TBI registration form"). The reporting is not, as Plaintiff contends, a quarterly adjudication of his status as a violent sex offender, such that the reporting requirement could be characterized as an ongoing procedural Due Process violation.

To the extent Doe argues in his objections that he has adequately alleged substantive Due Process violations, those contentions are similarly infirm. Defendants are correct that Doe has not identified which substantive due process right is allegedly violated and that Doe's objections to the R&R are not the proper vehicle to amend his complaint. Doe's amended complaint does nothing to rectify this shortcoming, adding one additional reference to Due Process in his new claim under Count VI, but otherwise failing to identify which substantive Due Process rights are infringed upon under Counts III(a), (d), or (e). Substantive Due Process "prohibits States from infringing fundamental liberty interests, unless the infringement is narrowly tailored to serve a compelling state interest." (ECF No. 52, at 7 (quoting *Brown v. Bd. of Educ. of Shelby Cnty. Sch.*, 47 F. Supp. 3d 665, 678 (W.D. Tenn. 2014)).) Doe's incorporation by reference of the paragraphs that precede Counts III(a), (d), and (e) in his complaints, including in the Second Amended Complaint, is insufficient to put Defendants or the Court on notice as to what substantive Due Process violations he is alleging as to those counts.

11

For the foregoing reasons, allowing Doe to reassert his claims under Counts III(a), (d), and (e) would be futile, and it is recommended that the motion to amend be denied as to those counts.

B.   Doe's Amendments to Count V Should Be Permitted.

In Count V, Doe asserts that the Act inflicts cruel and unusual punishment upon him, in contravention of the Eighth Amendment. (ECF No. 60-1, at 50.) He alleges that he is "subject to significant mandatory minimum criminal[ ]penalties for non-criminal conduct" and "was in-fact subjected to cruel and unusual punishment by arrest and conviction[ ]for an unknowing, unintended retroactive technical violation of the Act." (*Id.*) In the Second Amended Complaint, Doe seeks to expound on how SORA is, in fact, punitive. In the section titled "The Act is Punishment," Doe inserts an additional eleven paragraphs to support his allegations that the Act constitutes a punishment (*id.* at 37–39), and he adds similar allegations to Count V (*id.* at 50–52).

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "[T]o violate the cruel and unusual punishment prohibition, a sanction must be *punishment*." *Willman v. Att'y Gen. of U.S.*, 972 F.3d 819, 825 (6th Cir. 2020) (citing *Cutshall*, 193 F.3d at 477) (discussing the plausibility of an Eighth Amendment challenge to the federal sex offender registry law). Based on that requirement of punitive sanctions, district courts have dismissed Eighth Amendment challenges to SORA based on Sixth Circuit precedent holding that "SORA is a civil, regulatory statute that does not impose criminal punishment." *Brown*, 2020 WL 7864252 (citing *Doe v. Bredesen*, 507 F.3d 998, 1004 (6th Cir. 2007); *Cutshall*, 193 F.3d at 477); *see also Burns v. Helper*, No. 3:18-CV-01231, 2019 WL 5987707, at *7 (M.D. Tenn. Oct. 24, 2019),

12

*report and recommendation adopted*, No. 3:18-CV-01231, 2019 WL 5964546 (M.D. Tenn. Nov. 13, 2019) (same).

Recent opinions have found, however, that SORA may be characterized as punitive. *Doe v. Lee*, 518 F. Supp. 3d 1157, 1204 (M.D. Tenn. 2021); *Reid v. Lee*, 476 F. Supp. 3d 684, 705 (M.D. Tenn. 2020); *Gwyn*, 2018 WL 1957788, at *8; *Haslam*, 2017 WL 5187117, at *20.[2] Those cases rely on *Doe v. Snyder*, in which the Sixth Circuit, considering a Michigan statute similar to SORA, found that the law was punitive in nature because it "meets the general definition of punishment," its restrictions are "onerous," it "advances all the traditional aims of punishment" without having a clear impact on recidivism (the primary nonpunitive purpose of the law), and "[t]he punitive effects of [its] blanket restrictions . . . far exceed even a generous assessment of their salutary effects." 834 F.3d 696, 703–05 (6th Cir. 2016). The cases also recognize that the binding Sixth Circuit cases deeming SORA nonpunitive are based on prior versions of the Act and thus do not prohibit reconsideration under *Snyder*. *See Reid*, 476 F. Supp. 3d at 706 ("The Sixth Circuit, in *Snyder*, did not overrule its earlier cases, but it did make clear that *Doe v. Bredesen* should not be viewed as mandating a rubber stamp for more restrictive registration regimes."). Based on that conclusion, "this becomes an easy case, at least with regard to the motions to dismiss," as "[v]irtually every observation that the Sixth Circuit made about the Michigan regime could be made about the Act with, at most, minimal tweaking." *Id.*; *see also Lee*, 518 F. Supp. 3d at 1183–1204 (applying the factors considered in *Snyder* in a thorough evaluation of SORA and finding it punitive as applied to the plaintiffs in that case). As

---

[2] These cases discuss the punitive nature of SORA in the context of ex post facto challenges. Whether the Act violates the Ex Post Facto Clause is a separate inquiry and, although Plaintiff has raised claims under that provision of the Constitution, Defendants have not suggested that allowing the Second Amended Complaint to include such allegations would be futile.

13

such, plaintiffs are "entitled to pursue discovery in an attempt to establish that Tennessee's system is just as faulty as Michigan's." *Reid*, 476 F. Supp. 3d at 706; *see also Haslam*, 2017 WL 5187117, at *20 ("At this stage in the proceedings, the Court simply cannot know the full extent of the Act's effects and therefore cannot reach a conclusion on whether those effects are punitive under the rubrics set forth in *Snyder*.").

Defendants assert in their objections to the R&R that Count V "does not allege that the Act itself imposes a cruel and unusual punishment because it is punitive," but rather "it alleges *that imposing a criminal penalty for a violation of the Act* is a cruel and unusual punishment." (ECF No. 55, at 2.) Count V, Defendants argue, is therefore "a challenge to Tennessee's decision to make certain actions a crime," which cannot be an Eighth Amendment violation "because Tennessee has an interest in preventing violations of the Act." (*Id.* at 2–3.)

Defendants may be correct that Doe's First Amended Complaint focused on Tennessee's decision to criminalize conduct he asserts is non-criminal. But the Second Amended Complaint enhances those allegations with descriptions of the cruel and unusual nature of the penalties imposed by SORA themselves. Doe expounds on the ways in which the notification and reporting processes are punitive, how they serve the traditional aims of punishment, such as deterrence and retribution, how they constitute shaming and marginalization, and how they are overbroad and excessive. (ECF No. 60-1, at 50–52.) To the extent Defendants are correct that the prior version of Count V was deficient, these additional allegations remedy any such deficiencies.

Defendants further assert in their objections that, even if SORA were a punishment, it is not cruel and unusual because it is not "inherently barbaric" or "disproportionate to the crime." (ECF No. 55, at 4 (citing *Graham v. Florida*, 560 U.S. 48, 59 (2010), *as modified* (July 6, 2010);

14

*Smith v. Howerton*, 509 F. App'x 476, 480 (6th Cir. 2012).) Whether the punishments Doe complains of can be characterized as "inherently barbaric" or "disproportionate to the crime," however, is the sort of fact-intensive inquiry that is inappropriately disposed of on a motion to dismiss. *See United States v. Young*, 766 F.3d 621, 626 (6th Cir. 2014) ("A defendant's particular circumstances are relevant to an as-applied Eighth Amendment claim and could render a sentence unconstitutional.") (collecting cases). "For the most part . . . the Court's precedents consider punishments challenged not as inherently barbaric but as disproportionate to the crime." *Graham*, 560 U.S. at 59. In making such a determination, "the Court considers all of the circumstances of the case to determine whether the sentence is unconstitutionally excessive." *Id.* As explained in *Graham*, if a court arrives at an inference of gross disproportionality when comparing the gravity of one's offense with the severity of the sentence, it then proceeds to "compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Id.* at 60 (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1005 (1991)). Then, if that "analysis 'validate[s] an initial judgment that [the] sentence is grossly disproportionate,' the sentence is cruel and unusual." *Id.* (quoting *Harmelin*, 501 U.S. at 1005).[3]

---

[3] In *Newsome*, another SORA case, the court ultimately concluded that the plaintiff's injuries did "not rise to the level of 'wanton' infliction of pain required for an Eighth Amendment violation." 2021 WL 1697039, at *6 (citing *Gebreneguesse v. Heyns*, No. 2:16-CV-12804, 2017 WL 9470792, at *4 (E.D. Mich. Apr. 26, 2017), *report and recommendation adopted*, No. 16-12804, 2017 WL 3224968 (E.D. Mich. July 31, 2017), *aff'd*, No. 17-2055, 2018 WL 4278568 (6th Cir. Apr. 20, 2018), (citing *Johnson v. Owens*, 612 F. App'x 707, 718 (5th Cir. 2015)) (concluding that a parolee had not stated an Eighth Amendment claim based on a requirement to participate in sex offender therapy); *Walp v. Quarterman*, No. 3-08-cv-605, 2008 WL 5099940, at *2 (N.D. Tex. Dec. 1, 2008) ("[T]he United States Supreme Court has never issued an opinion which holds that the Eighth Amendment can be violated by a prisoner's release on parole.")). *Newsome* is distinguishable, however, as the complaint did "not allege that Plaintiff has suffered any injury from being placed on the SOR other than the loss of housing and employment opportunities. For example, the Complaint does not allege that Plaintiff has been fined or incarcerated for failure to

Given the posture of the case and the state of the record, it would be premature to make a determination as to whether, as Defendants assert, the 270 days in jail Doe served for violating the Act and the additional time he spent in federal prison because his conviction violated his federal supervised release "do 'not present the same kind of extreme disparity between the sentence imposed and the crime committed that would offend the Eighth Amendment.'" (ECF No. 55, at 4 (quoting *United States v. Young*, 847 F.3d 328, 364–65 (6th Cir. 2017) (internal quotations omitted).)

Because SORA may be deemed punitive, notwithstanding *Bredesen*, and because Doe has alleged the ways in which the Act is punitive and that his punishments are disproportionate to his crimes in violation of the Eighth Amendment, Doe's proposed amendment of that claim is not futile. Nor are the amendments to Count V grounded in any of the other impermissible reasons that warrant denying a motion to amend, such as undue prejudice, undue delay, or bad faith. Doe should therefore be permitted to amend Count V as proposed.

C.  Doe's Damage to Reputation Claim – Count VI

The Second Amended Complaint includes numerous allegations to support Doe's newly asserted claim that he suffered reputational damage, including citations to Supreme Court and Sixth Circuit authority. (ECF No. 60-1, at 29, 34, 52–53.) Relatedly, in his request for relief, Doe asserts a claim for $500,000 in compensatory damages for harm to his reputation. (*Id.* at 55.) Defendants make no argument, based on futility or otherwise, as to why Doe should not be permitted to add these allegations or his new Count VI, and none of the circumstances

---

comply with SORA requirements." *Id.* In contrast, here Plaintiff has pled that he was jailed for failing to comply with the Act and alleges in the Second Amended complaint numerous ways in which the Act's penalties are cruel and unusual. (ECF No. 60-1, at 17, 50–52.)

counseling against amendment are present.  Justice therefore requires allowing the amendment to include Count VI and the related allegations.

## CONCLUSION

Consistent with the foregoing, the Court recommends that the Motion to Amend be GRANTED IN PART AND DENIED IN PART.  It is recommended that Counts III(b), (c), and (f) be struck from the Second Amended Complaint, as Doe has acknowledged their futility, and that Counts III(a), (d), and (e), be struck from the Second Amended Complaint, as asserting them would be futile.  It is further recommended that Plaintiff be allowed to file the Second Amended Complaint as including Counts I, II, III(g), IV, V, and VI.

RESPECTFULLY SUBMITTED this 25th day of January, 2023.

> s/Annie T. Christoff
> ANNIE T. CHRISTOFF
> UNITED STATES MAGISTRATE JUDGE

## NOTICE

Within fourteen (14) days after being served with a copy of this report and recommendation disposition, a party may serve and file written objections to the proposed findings and recommendations.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Failure to file objections within fourteen (14) days may constitute waiver of objections, exceptions, and further appeal.